Hi everyone. I would like to express my gratitude for Council's willingness to adjust their schedule last week to accommodate the issues we had for scheduling on Wednesday of last week and arranging to be with us for our virtual forum this afternoon to hear your cases and proceed with consideration of your appeals. And so we, I would just in opening just thank you for working that out with clerk's office. All right, Ms. Lanahan, if you're prepared please proceed. Thank you, your honor. Thank you, your honor. May it please the court Maria Lanahan on behalf of Appellant Precythe, Director of the Missouri Department of Corrections. This court should overturn the district court's denial of summary judgment because defendant Precythe should have been granted qualified immunity for two independent reasons. First, she did not violate Dean's eighth amendment rights. And second, because there is no case law clearly establishing any such violation. Specifically, there's no case that plaintiff points to that in which a department director running a department of 10,000 employees or some such large number has been held deliberately indifferent when she has basically delegated to a division level group like the office of professional standards, the charge of investigating allegations of sexual assault. Specifically here, I think a couple of things are important to remember. Both parties admit that it was the office of professional standards job to investigate allegations of sexual assault. And you can find that at the opposition for the motion or for summary judgment at paragraph nine. And you can also see it in the 28 CFR 115.71, which requires prompt and thorough investigation. And according to this abuse Supreme Court case in Garner, there is a presumption that agencies follow statutes and internal policies absent evidence to the contrary. And here, there is no evidence that plaintiffs can point to that this was not what the Department of Corrections was doing, or that Precythe knew that they were not doing so. And so this is, this is Judge Smith. Does the record show us what actually was taking place in the process that was prescribed in terms of what was underway for those in between the immediate jail officials and someone who's the head of the MDOC like the defendant here? So what the record does show, there's very little evidence about kind of what whether people's testimony on this, but we do have evidence of what the office of professional standards was required to do. And according to Garner, unless there's evidence that it was not doing the things that it said that it was supposed to be doing, then it was presumed to be doing so in a section 1983 case such as this. So for instance, we have Precythe's deposition at 64 to 66 saying that Alana Boyles, who is making all the personnel decisions and that division directors were the appointing authorities for the department. And so they would be making those, they both were making those personnel decisions and also were kind of allowed to do so under Missouri statute. We also know that the department of, that the legal department was getting in complaints and things like that. So, and then everything, we have a long portion of our brief in this case talking about kind of what the department's requirements were for its own internal policies. And there's just no evidence that those things weren't happening. And so essentially... Is it a question that Precythe didn't know what was happening with Dean or the threat to Dean, or is it that Precythe didn't know about what her subordinates were doing to deal with some of those issues? So I believe that it's their claim, and I am sorry if I'm getting your honor wrong because I think you broke up a little bit there, but I believe their claim is that Precythe was deliberately indifferent to this, what she knew was a substantial risk of harm, serious harm, to Dean. And so I don't think that she didn't know what was going on. I think they claim is that she knew that there was a substantial risk of serious harm and that she did nothing. And what the evidence shows is that she actually had a whole division department that dealt with these sorts of things and she was trusting them to do so. And there's no evidence that she knew that there was nothing going on. Well, that's fine. That was my question, actually, is what are we really getting at? And hopefully this is coming through clearly. Are we getting at your point? Is it that she had no idea because there's these newsletters or whatever that suggest what was in the prison? Or is it that she had delegated to someone else and didn't specifically know what they were doing to sort of alleviate the problem? Yeah, and so your honor, are you saying, are you asking which one do we think it is or which one do they think it is? No, which one do you think it? What argument are you making? Because I'm hearing two different arguments. I'm hearing you say she didn't know that the sexual assaults were happening. And at the same account, I'm hearing you say, well, even if she did know, she trusted these other people that take care of it. So I'm trying to figure out what your argument is. I think it's both. I think that it's both those things. Counselor, I thought it was fairly well understood that there was evidence put in that she was aware of the sexual assaults taking place. Not that she was aware of it. I don't believe what I believe she was aware of is that there were allegations of sexual assaults, which were from the lawsuit. So there's no there's no evidence in the record saying that, you know, precise knew that these were substantiated allegations at all. And so basically where the district court goes wrong here on the clearly established point is by looking at the Eighth Amendment right at too high a general. I want to go I want to go back to my question, which is it seems like there's at least a should have known here. You know, if she's getting newsletters, if there's if there's complaints being filed, she should have known that there was a potential problem that inmates were being sexually abused or assaulted. It's a different question, I think, than whether or not she delegated to subordinates to take care of that and whether that was enough under the Eighth Amendment. Okay, and, you know, just to kind of take those one at a time, I think she this sort of idea that she should have known of a substantial risk. I think there's there's it's not clearly established that simply having lawsuits filed is enough to let you know that there's a substantial risk of sexual assault to a different inmate who hasn't alleged that so far. Even a lot of even a lot of potential complaints and lawsuits that that still doesn't suggest that there's a problem at a particular prison. So here there were two, and I don't believe there is any case where there is is clearly established that two lawsuits filed against the same person is sufficient to put someone on notice that there is a substantial risk of sexual assault if they do if they if they basically do nothing. But I think what's happening here is that they didn't even do nothing here. What was happening is Defendant Freescythe was looking to her group, which she herself set up in 2017 when she first came into office, and she was looking at them to address these sorts of things. And so I think kind of it's a both and there's no evidence sort of the closest case I think is Riley. And Riley there's so unlike in Riley, there's no evidence that Freescythe was on notice of four investigations about inappropriate behavior over two years, some of which were substantiated enough to discipline Riley. And this case, there's no there's no discipline before these two lawsuits are sort of filed up blue. And so I think it's a very different case. And so that's I think the clearly established point is Riley is the closest thing. And that's four. And what I think you'll see here is if by the time the third lawsuit is filed, that is on July 2 of 2018. And at that point, Bearden is removed from any inmate contact. And so I think that is pretty clear that that's where the clearly established part allegations. And some of which were substantiated. So and then kind of moving on sort of the defendants in Riley also were specific to that prison and issue too. So those defendants were the supervisor of the prison and somebody else who was also supervising only one prison. And in this case, Freescythe is in charge of an entire department across the state. And she's chosen another group of people to be dealing with this. And so you're saying that the record doesn't tell us what was occurring in those intermediate steps of review. The record wasn't telling us what was occurring between the time that that Freescythe got the the news article sent to her. Is that what your honor is saying? Well, from the time, for instance, you say that the perpetrator was removed from a leadership role or from a role to have access to claimants. And I assume at that point, there had been some process for grieving or some process for making complaints to seek redress. What investigation was underway? Is there anything in the record to show that those whom the warden or excuse me, the director was relying on to do the follow up, to do the investigation of the allegations were actually doing something? So there's no evidence in the record of what was actually being done during that time. But what we do have evidence of is what was supposed to be being done and what Freescythe believed was being done. And so I think those sorts of things, I think, will play into that clearly established piece. Was there any discovery on that question before the summary judgment was reached? That would have addressed what was happening? I don't believe any of that. I'm not entirely certain on that piece. But what I do know is that whatever made it into the motion for summary judgment, there's no evidence in that piece. And so I know that there is a process by which this is taken care of by the Department of Corrections. And that according to Garner in the U.S. Supreme Court, if there's no evidence that the Department of Corrections was not taking affirmative steps in doing what it said it was doing, then we assume in such 1983 cases that it was doing what it was supposed to be doing, as opposed to assuming kind of the opposite. Counselor, you might be right on the clearly established point. You might have a good point that there's no cases or a group of cases that establish the principle. But I just wonder whether Freescythe had an obligation to do more, whether it's a good rule to say, well, a supervisory official can just, you know, delegate this to someone and hope it gets done, even though it presents a serious problem within the prison system. Could you address why your position doesn't implicate that particular problem? Well, I think our position doesn't implicate that problem because we're in compliance with PREA. So PREA doesn't, as far as I'm aware, doesn't require the head of the department to be involved. I mean, so there's a statute in the federal, in the U.S. codes, and then there's a lot of regulations relating to PREA. I don't believe there's anything, when I was reviewing those statutes, that I saw suggesting that the head of the department has to be directly involved in this. And in fact, the reason that Freescythe isn't directly involved in this is for protection of the inmates. And so PREA, we have a PREA group that addresses these sorts of things, and they are so that there's less of a danger of people being retaliated against and things of that nature. We even have a process by which people can go through kind of a third party, almost, to report to us so they can do so anonymously. So, I mean, I think that there's a reason why it's set up this way. And I think that if you take away that reason, you have the problems that kind of we're talking about here, which is that there are other issues that could come up, like retaliation and some such like that. I was just going to remind Ms. Lanny, I don't know if she's got a good view of the clock, but you're down to two minutes on your time. I didn't know if you wanted to reserve for rebuttal or if you wanted to continue, but Judge Strauss has a question. I'm happy to answer any questions. I'm happy to answer any questions your honors have right now. So suppose that the group ends up being, and I know this in this case, but it's it turns a blind eye to sexual assaults or at least doesn't punish or remove prison officials. Then who does the plaintiff go after? Does the plaintiff go after in a situation like that the group that's ineffective or can they get after the head of the department who set up an ineffective group? I think what you would be going after is the department that they said is ineffective. So if you could maybe show that there was knowledge by the head of the department that the PREA group was not doing its job, I think you could potentially go after the head of the department and in a situation like that because that would be delivered indifference. But kind of beyond that, I don't think so. And I'll reserve the rest of my time for rebuttal if your honors have other questions. Thank you Ms. Lynn here. Ms. Snow. May it please the court. My name is Jennifer Snow and I have the privilege of representing Terry Dean. Terry Dean was incarcerated at Chillicothe between June 2012 and October 2018. Throughout the duration of her time at Chillicothe, she was sexually assaulted, abused, and harassed by Correctional Officer Edward Bearden. Between March, April, May, June, and into July of 2018, Director Precythe knew of Edward Bearden's propensities to sexually assault inmates at Chillicothe and she did nothing to stop it. Ms. Snow, let me let me ask you the question I asked Ms. Lanahan and that is what's in the record regarding what took place in terms of once allegations were made, is there something in the record indicating that Priya or other prison officials between the actual perpetrators, the warden, and somewhere between that place and the top of the Department of Corrections that something was being reviewed or action was being taken? There is absolutely nothing in the record that establishes that and furthermore defendant is here asking you to say the district court erred by not considering policy information and processes that they had in place. What actions did the plaintiff take to seek redress prior to filing this lawsuit? She did not report it until after, well she reported it in summer of 2018 and then she herself was transferred to Vandalia. So she left Chillicothe in October of 2018 after taking complaints internally and they to protect her they they removed her from the facility. Is it counsel, whose burden is it to show at this stage that I guess something was done, nothing was done, is it your burden to show that nothing was done or is it your burden? I don't know whose burden of proof it is at this stage, is it the move-ins, is it the what exactly is your burden? I think it is the move-ins burden to show that something was done but again the record in this case is very clear that clearly that it nothing was done. That Director Precythe was given information from her legal team, from an outside attorney with the Slough Law Clinic, from lawsuits itself, for news roundup articles that were sent to her, all of which she admits she received and read for months and she did absolutely nothing. There's nothing in the record that says she delegated anything. Had she done that, had she taken any step, any action, I would more likely than not be in front of you right now. Let me follow up with that because opposing counsel says well she set up this group and she can trust that this group is taking action in accordance with general policies of the prison system and so she didn't need to micromanage the out. There is no identifiable policy or procedure requiring an immediate response to an emergency situation such as this, such as rape in prison. There is no policy. On the record, outside the record, I don't know if it as I see it, there is no policy for that in place. So are you making the argument that I was suggesting to opposing counsel that this is a completely ineffective group and they've done nothing and that it's not fair for Presythe to hide behind a group that's doing nothing? Is that what you think the record supports at this point? I think the facts of this case specifically support that. I'm not saying that in general the group fails, but I'm saying something failed in this case and that is why M. Presythe has been named in this case and that's why we're before this court today. Is that enough? Is that enough though? Suppose, and this is kind of what I was getting at with opposing counsel, suppose they've done a great job in the past, so it's the opposite point. They've done a great job and I don't know if they had or hadn't, but suppose they had and this is the first time they failed. Is Presythe deliberately indifferent by relying on a group that's knocked it out of the park, so to speak, in terms of accountability? No. I think that in this case, again though, there was no emergency response. There was no action at all. I think it sets it apart from, well, I mean there's tons of cases, not tons, but there's case law out there, you know, where some prison official has knowledge and does nothing that is deliberate indifference and that is what M. Presythe has done in this case. As far as clearly established goes, I do want to highlight for the court the Kali case and that was highlighted by the district court as well, but it held as of December of 2002. It was, in fact, clearly established, if not even before then, that the sexual assault of an inmate by a guard violates the inmate's constitutional rights and a step further than that, that a supervisor who was deliberately indifferent to that risk can be held liable under 1983. Counsel, we're several steps beyond a guard and a supervisor at a specific facility. When this claim goes, it has to at least get through PREA and then also go the additional step to get to the head of an entire state agency. What case do you have that fits that pattern? So your first point as to PREA, if PREA was followed or not in this case, again, defense counsel is asking you to consider all these policies. They are not part of the record before the district court. The policies were first brought up on appeal in the briefing before this court. What case do you have that holds a director of a state agency responsible for the specific acts, particularly in the context of corrections, holds a director of corrections responsible for acts made in one specific facility? I am not aware of a director specifically being held liable. However, it is our position that deliberate indifference is deliberate indifference. If the warden had the requisite knowledge and failed to act, if an administrator had the knowledge and failed to act, if the director had the knowledge and failed to act, that's why we're here. Why did we not sue the warden? Why did we not sue anyone else on the chain of command? We don't have the evidence we have that we have against Anne Presi. She was repeatedly told Edward Bearden specifically is raping people at Chillicothe specifically, and she just sat back and did nothing. Counsel, I just want to follow up. So is no one else a defendant here? I know on appeal we have Presi, the director of the entire agency. Do we have no prison guards, no supervisors, no warden? Is the only defendant, in other words, Anne Presi? On this appeal, yes. On the underlying case, all the correctional officers that assaulted Terry Dean are part of that case. Okay, thank you. I do want to highlight quickly for the court the actual motion for summary judgment that was filed by Director Presi, and I want to turn to the statement of facts and the affidavits, and they are very carefully crafted, kind of like in the Whitson v. Stone County jail case, where actually this court held that those affidavits were actually suspicious. Here, if we turn to appendix 56, statement of fact 13, which is the exact language of Presi's affidavit, paragraph 5, appendix 64, it reads, defendant Presi had no personal knowledge of plaintiff's claims until the filing of this lawsuit. What that does not say is defendant Presi had no knowledge of other victims of Edward Bearden's claims before filing of this lawsuit. Turning to the next statement of fact 14, still at appendix 56, Presi's affidavit, paragraph 7, still at appendix 64, it reads, defendant Presi was not aware of specific allegations against defendant Bearden prior to the filing of this lawsuit. What that does not say is that she had no knowledge of any allegations about defendant Bearden raping people at Jellicothe. I'll just do one more for good measure, but I just want to highlight for the court the very carefully crafted statement of facts in this case, and statement of fact 15, still at appendix 56, but this time it mirrors Matt Breesacker's affidavit, paragraph 7, at appendix 67. It reads, defendant Presi is not routinely briefed on whether inmate claims investigated by the Missouri Department of Corrections is substantiated or unsubstantiated. What that does not say is that she is never briefed or that she was not briefed on those issues in this case. I want to just highlight for the court the Letterman case that actually is in the defendant's brief, and I just want to kind of make the parallel argument here that, so the Letterman case, an inmate's in a padded cell, he was being monitored 24-7, there's only one way to open the cell doors, a correctional officer, Farnsworth, who was responsible for all the well-being of all the prisoners inside the unit, he's aware he's only told open the cell door in an emergency situation. People only need to go into this padded room in an emergency. He's phoned, he says, no, I'm too busy, I'm not going to open the cell door. Then the court highlighted, even after he didn't do that act, he failed to follow up at any time with anyone about that inmate, and he died three days later. And the court said he had enough information, he had authority to act, he did nothing, a jury could infer that that was deliberate and different. Same situation here with Presi. She had enough information, she had the authority to do something about it. And again, this is an emergency situation, I'm not talking about failure to have meat at lunch or failure to get Advil for a headache, this is a very important issue. She had knowledge, she had the authority to do something, and she did nothing. And at the summary judgment stage, the district court got it right. There's enough evidence to take that to a jury. Can they make the inference that she was deliberately indifferent based on what she knew? And the unreasonableness of doing absolutely nothing about it. I also want to highlight, just because it's been kind of questions from the bench today about the clearly established aspect, it is not necessary to have a case directly on point or the issue with the precise action or admission on point to hold what we're asking this court to do in this case. And that is the North Fleet v. Arkansas Department of Human Services case. Site is 989F2289. Yeah, again, we are of the position it was more than clearly established that Anne Presi should have known that by doing nothing and having all this notice, she was deliberately indifferent to the serious risk of sexual assault that Terry Dean entered between March through July of 2018. I want to distinguish the Davis case quickly, just because I know that it's a case that was heavily relied upon by Defendant Presi within the briefing. And I'm so much shocked that it was a systemic issue about the failure to get medical care in an institution. This case is not that. This case is a very specific perpetrator that was repeatedly assaulting prisoners at Chillicothe, not the 500 institutions or 20 institutions, whatever, at Chillicothe, repeatedly for months, for years. And Director Presi did nothing. And importantly, too, we talk about a lawsuit, two lawsuits, three allegations, four. I want to remind this court that Karen Kyle's petition that was filed in May and the News Roundup articles went to Director Presi in early June. That highlighted that Karen Kyle was raped more than 20 times. This is not a one-off incident or two times, four times, more than 20 times. Karen Kyle was raped by Edward Bearden. This is the Davis case, and I might be mistaken, another case where somebody higher up relied on subordinates to take care of the situation. And it turned out that those subordinates didn't do a good job. But I think the court ultimately held that there was no individual liability for somebody up the command chain. Yeah, I believe that was the supervisors in the Davis case. But I think that the court held they were put on a pattern of a constitutional violation because they were only notified of two isolated incidences. One was a failure to give medicine, broke in the back. One was failure to give medicine, had a seizure, I believe. That was the facts, I think. And again, this case is not that. This case is repeated ongoing sexual assaults by Edward Bearden, and all of that information was given to Director Presi repeatedly, and she did nothing to stop it. You see, I am about out of time, so I would just conclude that the District Court properly identified material factual disputes regarding whether Director and Presi violated the Constitution. The District Court also properly found that there is clearly established law that prohibited Director Presi's deliberate indifference towards plaintiffs' substantial risk of sexual assault by Bearden, and that Director Presi is not entitled to qualified immunity at the summary judgment stage, and the District Court's decision should be affirmed. Thank you. Thank you very much. Ms. Lanahan, your rebuttal. You're muted. I'm going to try and make a few quick points, Your Honors. The first is what's really at issue here is three weeks. Three weeks between June 11th of 2018 and July 2nd of 2018 when Bearden was taken off the floor. The question is, is Defendant Presi deliberately indifferent for believing that her group is handling this, and they did handle it within three weeks. So, and then I wanted to kind of push into this issue. Who has the burden? So, at this point, they have, at the summary judgment stage, to show evidence that there's a genuine issue of material fact that would change whether qualified immunity would apply. So, it's their burden, and also clearly establishes their burden. Whitson v. Stone City shows that the policy is evidence, even if it is circumstantial, and there's no evidence that it wasn't followed. And then in Godinez, Seventh Circuit case, I may finish my sentence. Please. It said that under the Eighth Amendment, you can delegate prison functions to a subordinate. So, I would just ask this court to reverse the District Court's opinion. Thank you, Ms. Lanahan. The court wishes to thank both counsel for participating in argument before the court. We will consider the arguments as they've been made in supplementation to the briefing, and we'll render decision in due course. Thank you.